**Roy JONES, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 16396.**

United States Court of Appeals
Fifth Circuit.

June 10, 1957.

Rehearing Denied July 3, 1957.

---

Wesley R. Asinof, Atlanta, Ga., for appellant.

John W. Stokes, Jr., Asst. U. S. Atty., James W. Dorsey, U. S. Atty., Atlanta, Ga., for appellee.

Before BORAH, RIVES and BROWN, Circuit Judges.

PER CURIAM.

On a trial before the court without a jury, the appellant was convicted of knowingly having in possession an unregistered still in violation of Section 5601, Title 26, United States Code, making and fermenting mash in violation of Section 5216 of said Title, possessing 413 gallons of nontaxpaid distilled spirits in violation of Section 5008 of said Title, and of working in an unregistered distillery in violation of Section 5681 of said Title. The sole insistence on error goes to the overruling by the district court of the appellant's motion to suppress. The findings of fact made by the court after hearing the evidence are not attacked. In our opinion, those findings warranted, indeed required, the conclusions of law reached by the court and the overruling of the motion to suppress. Since such findings and conclusions have not previously been published, they are attached as an Exhibit to this opinion. The judgment is

Affirmed.

### Exhibit

#### "(Title Omitted.)

"Roy Jones has filed a motion in this Court to direct that certain property, to-wit: One 6 horsepower boiler, electric fuel burner and about 15 barrels, be suppressed as evidence and ordered returned to him on the ground that on the premises of the residence of Roy Jones on No. 136 Highway in Dawsonville, Georgia, Route 3, said articles were unlawfully and illegally seized from said premises on May 2, 1956, by federal officer W. W. Langford and four others whose names are unknown.

"The matter came on for a hearing before the Court, evidence for both parties was heard; memoranda of authority submitted and after due consideration the Court makes the following:

#### "Findings of Fact.

"On April 30, 1956, the federal investigators of the Alcohol & Tobacco Tax Unit of the Internal Revenue Department received information that Roy Jones was operating an illicit distillery in his home in Dawson County, Georgia. The Government refused to reveal the source of this information and the Court cannot determine that such source was reliable; however, the defendant, Roy Jones, had previously been found to be operating an illicit distillery in his home and the federal officers knew of this fact and they did credit the information and on that date made an investigation near the home of Roy Jones.

"In a hollow to the rear of Roy Jones' house, the officers found spent mash flow-

ing down a branch and upon investigation discovered that it was running from a concealed rubber hose which, upon being traced, led in the direction of the defendant, Roy Jones' home, tracing said hose to within about 75 yards of his home. On the following day, the federal and state officers placed themselves across the public highway from Roy Jones' home concealing themselves in a woods to where they had plain view of the defendant Roy Jones' house and while there they heard the noise of a blower burner, this blower burner being of the type generally used in Dawson County, Georgia, to heat illicit distilleries, no other use for such a blower burner being known in said county. The officers also smelled the odor of hot mash coming from the direction of the house and they kept the house under surveillance until after 2:00 o'clock in the morning of May 2 and during this time they heard much activity, the moving of heavy objects about, inside the house, with the blower burner operating as late as 2:00 o'clock A.M.

"During the watch over Roy Jones' house, the officers observed a motor vehicle go into the yard of the residence and during the stay of the vehicle the blower burner did not run but after the vehicle left, the sound of the blower burner was again heard.

"Shortly after 2:00 A.M., on May 2, 1956, the officers left their post of observation and returned to Gainesville and during the day of May 2, 1956, federal officer Woody W. Langford went before United States Commissioner in Gainesville, Georgia, and obtained a daylight search warrant to search the dwelling and premises of the defendant, Roy Jones; Langford at that time making affidavit before the United States Commissioner which stated in substance what the officers had discovered and asserted the belief that there was an illicit distillery in the home of Roy Jones.

"Late in the afternoon the officers returned to their post of observation, near the home of Roy Jones, and desiring to seize any vehicles engaged in removing the illicit liquors they did not immediately execute the daylight search warrant but waited for some vehicle to arrive. Since no vehicle came to the dwelling until after dark, they did not execute the daylight search warrant but remained on watch until after dark and until about 9:00 o'clock P.M. About 9:00 P.M. some person left the residence of Roy Jones and went up the road toward the home of Frank Jones, the father of Roy Jones, and where Millard and Grady Jones, brothers of Roy Jones, lived and at that time the officers overheard a conversation when it was asked of some one in Roy Jones' house if they were ready for the truck to be brought to the house. A short time later, a truck left the yard of the home of Roy Jones' father nearby and drove into the yard of Roy Jones' house and around into the back where the officers heard a thumping sound as though there was activity with heavy objects and shortly thereafter the truck pulled out from the rear of Roy Jones' house and started to drive into the highway but it was rainy and wet and as the truck tried to pull up the incline from the yard into the highway it became stuck and at that point the officers made the initial move to seize the truck and raid the home of Roy Jones. They arrested James McKinney and William Grady Jones, occupants of the truck, and seized 413 gallons of nontaxpaid liquor which was loaded on the truck. About that time a car drove up into the yard of Roy Jones' house and in the car was the wife of Roy Jones with his children, and Mrs. Lois Willis, the sister of Mrs. Roy Jones and her children. Mrs. Roy Jones undertook to block the doorway to keep the officers from entering the dwelling house, telling the officers to wait until her husband, Roy Jones, returned. A twelve year old son of Roy Jones obtained a shotgun and while he did not point it at the officers, he held it at port arms in what the officers considered a threatening manner and the first entry into the residence was made by State Agent Hollingsworth to secure the shotgun and take it away from the child. Mrs. Jones asked

officer Woody Langford if he had a search warrant and Langford replied that he did not need one and the officers then searched the premises without a search warrant.

"The house had only two or three doors and there were five officers watching the residence and it would have been possible for the officers to watch each of the doors and still send another officer for a night-time search warrant had the officers deemed this to be necessary.

"Upon a search of the premises, it was found that in a downstairs room of the house there was a complete distillery consisting in part of an upright boiler with a blower burner with which to heat it, and in the attic there was 2400 gallons of mash with hose pipes leading to the outside for the disposition of the spent mash. There were no signs posted showing it to be a registered distillery. It was fully setup and ready for operation and had been recently operated. A small quantity of nontaxpaid liquor was found in the residence also.

"The Court finds that the facts and circumstances within the knowledge of the officers were sufficient in themselves to warrant a man of reasonable caution in the belief that an offense was being committed and therefore the Court finds that probable cause for the search existed at the time the search was made.

"Conclusions of Law.

"Only unreasonable searches are proscribed by the Fourth Amendment. There is no precise formula for determining reasonableness. Every case must turn on its own facts and circumstances.

"If the officer has no warrant, he must show probable cause.

"Probable cause is reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the party is guilty of the offense with which he is charged. See Dumbra v. United States, 268 U.S. [435] at page 441 [45 S.Ct. 546, 69 L.Ed. 1032]. The search here was not unreasonable and did not violate the Fourth Amendment

because the officers had reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that Roy Jones was guilty of the offense of operating an illicit distillery in his home and this is true even though the officers had time to obtain a nighttime search warrant. See United States v. Rabinowitz, 339 U.S. 56, at page 66 [70 S.Ct. 430, 94 L.Ed. 653], overruling Trupiano v. United States, 334 U.S. 699 [68 S.Ct. 1229, 92 L.Ed. 1663], to the extent that the Trupiano case required a search warrant solely upon the basis of practicability of procuring rather than upon the unreasonableness of the search, stating that: 'The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.'

"Judgment.

"The motion to suppress is overruled and denied.

"This the 11 day of October, 1956.

"Boyd Sloan,
"United States District Judge.
"Filed Oct. 11, 1956."