**Will Parks CLAY and Mattie Bell Anderson, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 16385.**

United States Court of Appeals Fifth Circuit.

June 29, 1957.

Rehearing Denied Aug. 5, 1957.

Writ of Certiorari Denied Oct. 28, 1957. See 78 S.Ct. 96.

Paul M. Conaway, T. Reese Watkins, T. A. Jacobs, Jack J. Gautier, Macon, Ga., for appellant.

Robert B. Thompson, Asst. U. S. Atty., Macon, Ga., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

## HUTCHESON, Chief Judge.

Charged in three counts of an indictment, count one charging him with a conspiracy with Mattie Bell Anderson and others to violate sections of the Internal Revenue Code prohibiting wilfully attempting to evade and defeat the payment of the wagering occupational tax and the federal excise tax imposed on wagers, and counts two and three charging him alone with the substantive offenses of wilfully attempting to evade and defeat the payment of said taxes, and convicted on all of these, Clay is here urging: that he was convicted by the use of evidence obtained in violation of the fourth amendment and because thereof the judgment must be reversed.

Mrs. Anderson, who was convicted on the conspiracy count and has appealed, makes the same claim and, in the alterna-tive, claims that the evidence as a whole was insufficient to convict her.

In support of their primary claim, appellants assert: (1) that the search warrant, under authority of which the defendant's house was searched, was not in accordance with, but in violation of, Rule 41,[1] and that no probable cause was shown to support its issuance; and (2) that the evidence obtained from appellant Clay at the time of his arrest was taken without a warrant of arrest and without probable cause for arresting him and seizing it.

Appellee, on its part, urges upon us that the search warrant was validly issued upon an adequate showing of probable cause and that the arrest and search of Clay at his residence was also valid. As to the sufficiency of the evidence to convict Mrs. Anderson of conspiracy it insists that the record amply supports the verdict, indeed that any other verdict would have been unreasonable.

A brief statement of the facts[2] will disclose, we think, that there is little

1. "Rule 41. Search and Seizure
   "(a) Authority to Issue Warrant. A search warrant authorized by this rule may be issued by a judge of the United States or of a state or territorial court of record or by a United States Commissioner within the district wherein the property sought is located.
   "(b) Grounds for Issuance. A warrant may be issued under this rule to search for and seize any property.
   "(1) Stolen or embezzled in violation of the laws of the United States; or
   "(2) Designated or intended for use or which is or has been used as the means of committing a criminal offense; or
   "(3) Possessed, controlled, or designed or intended for use or which is or has been used in violation of Title 18, U.S.C., § 957.
   "(c) Issuance and Contents. A warrant shall issue only on affidavit sworn to before the judge or commissioner and establishing the grounds for issuing the warrant. If the judge or commissioner is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property and naming or describing the person or place to be searched. The warrant shall be directed to a civil officer of the United States authorized to enforce or assist in enforcing any law thereof or to a person so authorized by the President of the United States. It shall state the grounds or probable cause for its issuance and the names of the persons whose affidavits have been taken in support thereof. * * *"
   Sec. (e) makes provision for a motion for return of the property and to suppress evidence. Rule 41, Fed.Rules of Criminal Procedure, 18 U.S.C.A.

2. On June 21, 1955, at about 2:40 P.M. Clay drove his automobile into the yard of a dwelling house located at 140 Morton Avenue, Athens, Georgia, which had been purchased by Mrs. Anderson's mother and was lived in by Mrs. Anderson and Mr. Clay. Government agents had been watching the house for some time and according to plan some of them had been following and some were waiting for Clay to arrive at that address. As soon as he drove into the yard, federal agents drove in behind him. Clay got out of his automobile, in his hand a brown paper bag, the type, according to some of the testimony, which lottery people carry their lottery tickets in, and of a similar description and size to those one of the agents had seen Clay take into the house on the preceding Thursday and Friday.

if any conflict in them, and that our determination of the question of law arising thereout will be dispositive of the appeal.

The appellants, relying for their attack upon the search warrant upon claimed defects in it and for their attack upon the arrest and search of Clay upon the opinion of this court in Clay v. United States, 239 F.2d 196, holding that a search of his person under the facts there shown was not a reasonable search, insist that the arrest and the search and seizure were invalid, the evidence obtained thereby should have been suppressed, and the conviction obtained by its use must be set aside.

Directing their main attack upon the search warrant, appellants thus state their case against it:

"The point we wish to emphasize here is that *no person appearing* before the Commissioner stated that he had reason to believe that, as the warrant itself states, 'there is now being concealed certain property; namely, books, records, papers, documents ard memoranda relating to the business of accepting wagers.' Nothing is said in the four signed affidavits which would lead a reasonably discreet person to believe that any such books, records, etc., were being concealed at the place in question. In other words, there is no fact allegation or statement that the books and records were being concealed in the house, and for this reason alone there was no basis for the issuance of the warrant. Even if such a conclusion had been stated by any one of the affiants there would still be absent from the affidavits such fact statements as would justify a reasonably prudent person in concluding that lottery paraphernalia was, on the 21st day of June, 1955, concealed in the premises by a person or persons

When Clay saw the three government agents, he started running to the house, and though Agent Pair shouted to him to halt and advised him that he and the other agents were federal officers, Clay continued to run. When he reached the front porch which was only a few steps from his car, he was physically apprehended by Pair and Lewis and, either because of the collision or the ensuing struggle which followed, the brown paper bag Clay was holding split and a smaller bag fell to the porch. Lewis picked the smaller bag up and said, "This is it", and both officers told Clay he was under arrest.

At this particular moment, Morris, another agent who had physical custody of the search warrant which had been procured in anticipation of Clay's arriving at the house, requested Mrs. Anderson to open the front door, advising her that he had a search warrant to search the premises, and upon her refusal, the officers jerked the screen door open and entered the house. Mrs. Anderson refusing to accept the warrant, Pair laid it on the television set in the living room where she was, and proceeded with his search and seizure.

At the hearing on the motions to suppress, Clay testified that 140 Morton Avenue was his personal residence, that on June 21, when he drove up into the yard, got out of his car, and started to go into the house,—and he had a right to go into it,—if he had not been arrested he would have entered it. He further testified that when he was at the house he had free run of it, and in effect every room in it was under his custody and control. After the brown bag had been seized from him, Clay was subjected to a perfunctory search and so was the automobile. The officers who produced the search warrant and executed the search and seizure were experienced investigators and they testified fully as to how the operation was conducted. They also testified on the trial: that they had received reliable information to the effect that Clay was operating a lottery and that he was checking up at Athens; that they first determined that he had not complied with the requirements of the wagering tax act and then established a watch over his activities. Having observed him for several days, they procured the search warrant to search the place which, in the affidavit for the search warrant and in his testimony one of them swore was being used as the place of Clay's checking up operations. They waited near the house until Clay arrived before they drove to the premises but when they saw Clay with the paper bag in his hand and running for the house, they apprehended and arrested him.

engaged in carrying on a lottery business without having first purchased the occupational stamps required by law. In the four affidavits which are signed, only the most loose, vague, doubtful and disconnected facts are stated. * * * "

Thus appellant's attack upon the search warrant reduced to their ultimate substance are: that the affidavits on which it was based did not sufficiently show that lottery records would be found in the house to be searched; that no person appearing before the Commissioner, stated under oath that he has reason to believe that there is now being concealed in the premises to be searched certain property, viz., books, papers, records and memoranda relating to the business of accepting wagers; and that nothing was said in the four affidavits which would lead a reasonably discreet person to believe that any such property was being concealed there; that, in short, there is no sworn to fact allegation or statement that books or records or other paraphernalia are being concealed at the house, and because this is so, there was no basis for the warrant. In further support of their attack, urging upon us that the only papers attached to the search warrant which contained any reference to the fact that described property was being concealed at 140 Morton Avenue, Athens, Georgia, or sought a search warrant to seize it, was in blank and that, of the affidavits, one of them was not taken before the Commissioner and the others made no specific statement as to any property being in the residence, they insist that it must be held that the search warrant was invalid and the search of the house was therefore not supported.

The United States, citing numerous cases,[3] presses upon us that in each case involving arrests and searches and seizures, the question for decision is whether the evidence as a whole supports the conclusion of the district judge that the action of the Commissioner in issuing the search warrant or the action of the officer in making an arrest was or was not reasonable. It urges in short that there is no hard and fast rule precisely pinpointing what should be said and done in applying for and issuing a search warrant or what facts must appear to justify an arrest and search without a warrant; that in each case the inquiry is, are the facts put forward to support the action impeached in any way and, if not, are they as a whole sufficient to support the view that the conclusion reached and the action taken in accordance with the rule were not unreasonable but reasonable.

We find ourselves in general agreement with the position of the United States that the rule of reason applies in the consideration and determination of questions such as those presented here, and the majority is of the opinion for the reasons hereafter stated, that its application requires affirmance of the judgment.

The documents that were before the Commissioner when he issued the search warrant consisted of five papers physically attached. The first of these was a blank unsigned form of affidavit which is here reproduced in full:

"Affidavit for Search Warrant.

"District Court of the United States, Middle District of Georgia, Macon Division.

"Commissioner's Docket No. 2 Case No. 532.

"United States of America,

v.

Premises known as 140 Morton Avenue, Athens, Georgia.

---

3. Including: Brinegar v. U. S., 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; U. S. v. Wroblewski, 7 Cir., 105 F.2d 444; Walker v. U. S., 5 Cir., 225 F.2d 447; Flores v. United States, 234 F.2d 604; Lowery v. U. S., 5 Cir., 161 F.2d 30; Hysler v. U. S., 5 Cir., 86 F.2d 918; Dixon v. United States, 5 Cir., 211 F.2d 547; Clifton v. United States, 4 Cir., 224 F.2d 329; Cannon v. United States, 5 Cir., 158 F.2d 953; Kelley v. United States, 8 Cir., 61 F.2d 843; to which may be added United States v. Trujillo, 7 Cir., 191 F.2d 853; Byrd v. U. S., 5 Cir., 216 F.2d 606; Jones v. U. S., 5 Cir., 245 F. 2d 32.

"Before (Name of Commissioner) Walter F. Doyle, (Address of Commissioner) Macon, Georgia.

"The undersigned being duly sworn deposes and says: That he (has reason to believe) on (on the premises known as) 140 Morton Ave., Athens, Georgia, Athens Division, in the Middle District of Georgia, there is now being concealed certain property, namely, (here describe property) books, records, papers, documents and memorandum relating to the business of accepting wagers by a person or persons, (here give alleged grounds for search and seizure) liable for the payment of the special tax provided for and imposed "by Sections 4411 and 4412(a), IRC of 1954, which has not been paid, all in violation of Section 7203, IRC of 1954. [26 U.S.C.A. §§ 4411, 4412(a), 7203]

"And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

"See Attached Affidavits.

Signature of Affiant.

Official Title, if any.

"Sworn to before me, and subscribed in my presence, June 21, 1955.

"Walter F. Doyle,
(Seal) United States Commissioner."

Attached to this paper were four affidavits, one of them sworn to before a special agent of the Internal Revenue Service (and thus of no validity or import in this connection), the other three sworn to before the Commissioner, as required by law, all documents bearing the date June 21, 1955.

Rule 41 quoted above, requires that for the Commissioner to issue a search warrant he must make a determination that the "grounds for the application exist or that there is probable cause to believe that they exist". If the affidavits which conformed to the requirements of the rule were sufficient to support such a determination of probable cause by the Commissioner, neither the trial court nor an appellate court is justified in quashing the warrant as void. In construing the document we must apply the rule of reason. Gregory v. United States, 5 Cir., 237 F.2d 727. If, therefore, the three properly executed affidavits, together with the first document to which they were attached all together sufficiently establish the grounds for issuing the warrant, then it is immaterial that there was no signature on the first document, because it became a part of the other three affidavits.

We must thus determine whether together the affidavits were sufficient to establish the grounds for issuing the warrant. We are satisfied that they were.

From the affidavit of agent Richard E. Lewis it appeared that appellant Clay had several times been seen carrying into the house in question paper bags of the sort that were commonly used by lottery operators in carrying lottery paraphernalia, that he had a reputation for engaging in the business of accepting wagers for profit, and that he was known to the neighbors as "Mr. Anderson", an alias.

Agent William A. Morris' affidavit recites that from a search of the records of the District Director of Internal Revenue it appeared that up to June 6, 1955, neither Will Parks Clay nor any person named Anderson had obtained the special occupation stamp for the fiscal year ending June 30, 1955, required of lottery operators. It was also cited that telephone company records showed that within the six months preceding June 20, 1955, a number of long distance telephone calls had been made from the 140 Morton Avenue house to known or reputed lottery operators.

Agent William A. Pair in his affidavit swears that he had been reliably informed that appellant Clay was carrying on gambling activities in the home of Mattie Bell Anderson, that he had trailed and traced Clay's car to the 140 Morton Avenue address, that he had determined that its phone was listed in the name of Mrs. Anderson's mother, and

that he had twice previously arrested Clay and had both times found lottery equipment on him.

■ From these three affidavits the Commissioner could well find that the 140 Morton Avenue house was used by the known but unregistered gambler, Clay, for his operations, and that since he had repeatedly been seen carrying packages likely to contain gambling paraphernalia into it, and had apparently made numerous "business" calls from it, it was probable that in the house there could be found "books, records, papers, documents and memorandum relating to the business of accepting wagers by a person" delinquent in his obligation to pay the special tax. Nothing in the affidavits supports appellants' contention that the Commissioner could only have concluded that there was probable cause to expect the presence of the described equipment in the house only at the times that Clay himself was there, nor are any cases cited for the implied proposition that a search warrant may not issue unless there is positive assurance that the property sought is continuously on the suspected premises—as a matter of fact Rule 41(c) carefully distinguishes the affidavits required for the issuance of a daytime warrant from the positive assertions required for a warrant servable at any time.

■ There remains the question whether the reference to agent duBignon's affidavit, which had been improperly signed before another agent rather than before the Commissioner himself, vitiates the otherwise proper warrant. We do not believe that it does. The faulty affidavit recites merely a search of the records of the District Director of Internal Revenue, at an unspecified time, from which it appeared that neither Will Parks Clay, under that name or under any likely alias, nor any known employee of his, nor in fact any person in Clarke County, Georgia, had taken out a gambling tax stamp; thus the contents of the affidavit merely duplicate part of the facts recited by agent Morris.

■■ Furthermore, no case has been cited or found that holds that where the Commissioner refers to improper as well as to proper sources as the bases for his determination of probable cause, and the proper sources are adequate to support that determination, the warrant is still defective. There is no reason for analogizing the ex parte proceeding before a Commissioner in obtaining a warrant to the finding of fact of the trial court which may be set aside if possibly based in part on improper evidence, for in the latter case each piece of evidence presented to and considered by the court may be objected to by the opposing party and thus the court is warned that reliance on such evidence may be dangerous (or a failure to object waives most possible defects), while in issuing a warrant the Commissioner does not have the benefit of the cautioning guidance by opposing counsel; as the Government points out, Commissioners are not even required to be lawyers. Undoubtedly much that is contained in ex parte statements made to Commissioners to obtain a search or arrest warrant may be technically inadmissible, but if we find that that which was technically correct is sufficient to support the Commissioner's determination that in his opinion probable cause exists, we have no right to set it aside.

■ Finally, the appellant attacks the propriety of the court's refusal to suppress the evidence which was taken from Clay while standing on the porch of the Anderson house, assuming the search warrant for the premises was adequate. It is quite clear that without reference to the legality of the arrest of Clay, which we need not decide, the officers did have full authority under the search warrant to investigate the contents of the brown paper bag held in Clay's hand while on the front porch of the house. This is clearly within the principles stated in Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, and United States v. Rabinowitz, 339 U.S. 56, 70 S. Ct. 430, 94 L.Ed. 653.

The judgment of the trial court was without error and should be affirmed.

Speaking for myself alone, though in full agreement with the position of the government and of the majority that the rule of reason applies in the consideration and determination of the questions presented here, I am unable to agree with the conclusion of the majority that the application of that rule requires an affirmance of the judgment. Because of the fact that the basic "affidavit for search warrant", which the Commissioner apparently treated as signed and sworn to [see his jurat on page 15 of the record, and its almost complete embodiment by the Commissioner in his search warrant] [4] was neither signed nor sworn to, and Subdivision (c) of the rule, note 1, *supra*, provides that a warrant "shall issue only on affidavit sworn to before the judge or commissioner and establishing the grounds for issuing the warrant", I am bound to agree with the appellant that the search warrant was carelessly, improvidently and unlawfully issued, and that the judgment as to both defendants must be reversed because of the failure to quash the warrant and suppress the evidence obtained by its use.

This is a hard case and hard cases make bad law, but it seems clear to me that the issuance and use of a search warrant issued at least in part upon information furnished not under the pains and penalties of perjury because the so-called affidavit on which the Commissioner mainly relied was not sworn to, has tainted the whole proceedings with illegality. In short, the act of the Commissioner in issuing his jurat to an unsworn statement and presuming on the basis of that statement to issue a warrant was usurpation of authority which vitiates and nullifies the searches and seizures relied on to convict the defendants and requires a reversal of the judgment as to Mrs. Anderson because the only evidence against her was obtained by the use of the search warrant, and as to Clay because, whether or not the search of his person was under circumstances justifying the use and admission of the evidence found on him, reversal of the judgment as to him was required because of the use of the evidence illegally obtained under the search warrant.

This is not to say with respect to the arrest and search of Clay at the house and his general reliance upon the opinion of this court in 239 F.2d 196 as affording him safe conduct from molestation in his movements and activities, that the opinion was intended to, or that it can perform that office for him. That decision was based upon its own facts as they were particularly and carefully detailed in the opinion. It applies to and controls the decision of this case and other cases involving him only to the extent that the facts there dealt with reappear in them. If the acts of the officers in applying for, and of the Commissioner in issuing, the search warrant had been in accordance with law, I think their actions in arresting Clay and seizing the brown paper bag as he approached the house to be searched would, in view of their having a valid search warrant, have been well within the law. Justice and due process are two way streets, and, while as the decisions have many times stated, the right of a citizen to be free from unreasonable searches and seizures

---

4. In the search warrant the commissioner thus states the basis for his action:

"Affidavit having been made before me by William A. Pair, William A. Morris and Richard E. Lewis, and an affidavit having been made by F. G. duBignon, that he (has reason to believe) that (on the premises known as) 140 Morton Avenue, Athens, Georgia, Athens Division in the Middle District of Georgia (here describe property) there is now being concealed certain property, namely books, records, papers, documents and memorandum relating to the business of accepting wagers by a person, or persons, liable for the payment of the special tax provided for and imposed by Sections 4411 and 4412 (a), IRC of 1954, which has not been paid, all in violation of Section 7203, IRC of 1954, (here give alleged grounds for search and seizure) and as I am satisfied that there is probable cause to believe that the property so described is being concealed on the (premises) above described and that the foregoing grounds for application for issuance of the search warrant exist. * * * *"

must be respected and preserved, so must the right of the agents and officers of the United States to make reasonable searches and seizures in the proper enforcement of its laws.

While we did say in the Clay case, supra, that the fact alone that a man is a known gambler does not permit his arrest and search, we did not mean to, we did not say that that fact when considered with others, including the application for an issuance of a valid search warrant, will not support acts of officers, such as those here shown, done within the law to bring an offender to book. Mr. Clay will do well to remember that while the mills of the law grind slowly, they grind exceeding small, and that the pitcher that goes too often to the well leaves behind either the handle or the spout, and sometimes does not return.

With deference, I dissent from the judgment of affirmance.

Affirmed.

Rehearing , denied: HUTCHESON, Chief Judge, dissenting.