**UNITED STATES of America**

v.

**Warren HAYWOOD.**

**Cr. No. 31070.**

United States District Court
E. D. Louisiana,

New Orleans Division.
April 12, 1968.

246

Louis C. LaCour, U. S. Atty., John C. Ciolino, George P. Hand, Jr., Asst. U. S. Attys., New Orleans, La., for plaintiff.

Bernard A. Horton, New Orleans, La., for defendant.

BOYLE, District Judge:

The defendant, charged in an indictment with receipt and concealment of 2.780 grams of heroin contained in 35 capsules· in violation of 21 U.S.C. § 174, has moved to suppress the capsules which were found on and taken from his person on November 28, 1967 by Federal Narcotic Agents.[1]

After hearing the evidence at a hearing on the pretrial motion, and considering the post-hearing memoranda of counsel, we conclude the motion should be granted.

On November 20, 1967, the agents obtained a warrant issued by the U. S. Commissioner to search defendant's residence at 3602 Second Street in New Orleans. No warrants to search or arrest the defendant were sought. The premises search warrant was executed eight days later on November 28, 1967. Other than the heroin sought to be suppressed, the return on the warrant and the testimony adduced on the motion hearing show no evidence material to the prosecution herein was found.[2] Mover does not question the validity of the issuance or execution of the warrant. He does urge that the premises search warrant did not permit the agents to lawfully search his person.

The affidavit for the warrant, executed by Federal Narcotic Agent Coston, shows that on November 20, 1967 the defendant was well known to the agents as a narcotic violator, that the agents' surveillance of 3602 Second Street on November 19, 1967 established that one Smothers and one Curry Williams, both known to the agents as active wholesale and retail peddlers of heroin, had separately arrived at defendant's residence, remained for a short period and left, that the agents had information from two reliable informants that defendant was selling heroin at his residence, that on November 10, 1967 one of the informants had in fact purchased heroin from the defendant at that location and that two days before the warrant was issued the other informant furnished the agents with the information that defendant was in possession of a large quantity of heroin, the main portion of which was hidden in an undisclosed location in the rear yard of 3602 Second Street with a smaller portion being located in defendant's residence.

On November 28, 1967 Coston and two other Federal Narcotic Agents, with New Orleans police officers, went to de-

---

1. The return on the premises search warrant shows 33 capsules were seized. However, a recount after the return was made disclosed there were in fact 35 capsules.

2. A revolver seized was not found on defendant's person. Defendant abandoned his motion to suppress the revolver.

fendant's residence described in the warrant. While others went to the rear, Agent Coston went upon the porch of the residence, knocked and simultaneously declared he was a Federal Agent with a search warrant and demanded that the door be opened.

Seconds later, after hearing a woman's voice and a lot of hurried movement from within, from which he concluded the door would not be opened, Coston kicked open the door and entered. Thereupon he saw the defendant, his wife, another female unknown to him, and Curry Williams, alias Maker, whom he knew to be a narcotics peddler and had seen visit defendant's residence on November 19, 1967.

Going directly to the defendant, then standing by a cook stove attending a pot in which something, thought to be corn bread, was cooking, Coston informed defendant he had a search warrant and ordered him to stand still.

Then Coston asked the defendant if he had any "weapons, pistols, money or other valuables." When the defendant replied affirmatively and indicated the location thereof to be in an adjacent room, Coston and the defendant walked into that room, in which Agent Compton and the police officers were.

At that point and place, Coston "pat searched the defendant for weapons." Haywood wore lightweight and rather tight trousers. The "pat search" revealed to the agent's touch an object in defendant's left trouser pocket which Coston knew was not a weapon, but which, from experience, he concluded was a package of capsules.

Upon this discovery, Coston, continuing to hold the object from outside defendant's trousers, called Agent Compton to remove it. Compton did so, and upon removal it was found that the capsules were contained in a Wrigley's Doublemint gum outer wrapper.

Carrying capsules containing narcotic drugs in such wrappers is common among narcotic law violators and the agents had seized similar packages from other narcotic violators previously. Therefore, Coston, upon determining by touch that the package in defendant's pocket contained capsules and knowing defendant's reputation as a narcotic law violator, believed the capsules contained heroin.

After Compton opened the package and observed the capsules, it was his opinion (since confirmed by analysis) that they contained heroin. Thereupon, Compton informed Haywood he was under arrest and advised him of his rights.

Mover argues that although the application for the premises search warrant was sufficient to authorize the issuance of a warrant for the search of defendant's person, the agents sought only the premises warrant; that they converted the specific warrant to a general one and that, since the warrant did not authorize a search of defendant, such search was unlawful. He further contends that the search cannot be sustained as being incidental to a valid arrest.

The Government urges us to sustain validity of the search on the authority of Clay v. United States, 246 F.2d 298 (5th Cir., 1957); Walker v. United States, 117 U.S.App.D.C. 151, 327 F.2d 597 (1963), cert. denied 377 U.S. 956, 84 S.Ct. 1635, 12 L.Ed.2d 500 (1964), and dicta in United States v. Festa, 192 F.Supp. 160 (D.Mass., 1960). Alternatively, we are urged to declare the search valid for the reason that it was incidental to a valid arrest which the agents were authorized to make without an arrest warrant because "the information contained in the affidavit supporting the issuance of the [premises] search warrant sufficiently set forth an abundance of 'reasonable grounds' to arrest the defendant, Warren Haywood, without a warrant. * * * " 3

 Under the facts presented here, we reject the Government's contentions and hold that the search of defendant was illegal.

3. See Government's post-hearing memorandum.

From the sequence of events related by the agents, though when the search of the premises occurred was not discussed, the indication is such search was not made until after the search of Haywood and his subsequent arrest. It is immaterial, however, when the premises were searched, for it produced no evidence of the law violation charged to the defendant or any other Federal offense.

The cases of *Walker* and *Clay*, supra, urged by the Government as being controlling here, we find inapposite. In those cases the containers, a paper bag and purse wallet seen by the officers to be passed from one defendant to another on the premises to be searched in *Walker*, and in *Clay* a smaller paper bag seen by the officers to have fallen from a larger bag held by the defendant while on the premises covered by the warrant, in which the seized evidence was found, were in full view of the officers [4] under circumstances making it not unreasonable for the officers to suppose that the objects of the search might be in those containers.

To be in the position of the officers in *Walker* and *Clay*, the agents here first had to conduct an actual search of the defendant's person and remove the package of capsules from its concealment in Haywood's trouser pocket.

The Court in *Walker* was careful to point out that

"This (the Court's approval of the search and seizure there) is not to say that the authority conferred by a warrant to search premises is co-terminous with that residing in a warrant to search the person. See United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). There are obviously situations where the grant of one cannot be enlarged to include the other. We hold only that, in the special circumstances shown by this record, due and proper execution of the warrant in question rationally comprehended within it the right to take the wallet and bag from the hands of appellant Woody."

We do not find the special circumstances of either *Walker* or *Clay* in this case.

■ The agents, when they obtained the warrant to search the premises, did not request a warrant to search defendant's person. In his post-hearing memorandum, the defendant conceded the sufficiency of the information contained in the affidavit, on which the former was issued, for issuance of the latter. Why the agents did not seek such a warrant is not explained. We find no reason for not submitting to the Commissioner the evidence for the purpose of obtaining a warrant to search Haywood. Considering all the facts and circumstances present here and the total atmosphere of the case, practicability of procuring a search warrant must be considered in determining whether the search of Haywood without a warrant was reasonable. The agents had ample opportunity to obtain a warrant on and after November 20, 1967 and up to the time they set out on November 28, 1967 to execute the premises warrant with justified confidence that the search would produce evidence of criminal activity sufficient to prosecute the defendant. Misplaced confidence or error in judgment, like inconvenience and trouble attendant to obtaining a warrant, where one is required, does not excuse failure to procure the writ. In our opinion the search without a warrant was not justified. Rent v. United States, 209 F.2d 893 (5th Cir., 1954); Williams v. United States, 382 F.2d 48 (5th Cir., 1967). See also Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948); United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); Niro v. United States, 388 F. 2d 535 (1st Cir., 1968); Baxter v. United States, 188 F.2d 119 (6th Cir., 1951); Steeber v. United States, 198 F.2d 615

---

4. See also United States v. Riccitelli, 259 F.Supp. 665 (D.Conn., 1966).

(10th Cir., 1952); Walker v. United States, 225 F.2d 447 (5th Cir., 1955).

The Government contends the information contained in the affidavit of November 20, 1967 authorized the agents to arrest the defendant on November 28, 1967 without an arrest warrant. That being true, it was also sufficient on November 20th and at times thereafter for the issuance of an arrest warrant,[5] but none was sought.

■ Crediting the Government contention, we must conclude the same information would have provided the reasonable grounds sufficient for belief that Haywood was then committing, or at least had committed, a violation of the narcotic drug laws and to authorize his arrest by the narcotic agents without a warrant pursuant to Section 7607 of Title 26 U.S.C.[6]

The search, to be sustained, must have been incidental to a valid arrest with or without an arrest warrant.

Although Coston's order, upon entering the residence, to Haywood to stand still restricted his movement, the restriction was for the limited purpose of preserving the premises for the search, or reducing the risk of interference with the search or preventing the destruction of evidence which the search was intended to reach. United States v. McKethan, 247 F.Supp. 324 (D.D.C., 1965).[7] No contention is made that Haywood was then arrested.

The evidence convinces us that the agents did not intend an arrest of Haywood and did not consider he was arrested until Agent Compton advised him he was under arrest following the person search and removal of the capsules from his trouser pocket. Indeed, the Government does not contend otherwise.

■ The difficulty in which the Government finds itself under its alternative contention is that the evidence shows that the agents apparently did not think the information they possessed (as set forth in the affidavit for the premises search warrant) was sufficient to arrest defendant without a warrant. Had they thought so, they would have, in our opinion, arrested Haywood on sighting him immediately upon entry into his residence. If they did regard their information sufficient for arrest without a warrant, the fact remains they did not arrest until after the search. The evidence convinces us that the agents regarded the grounds for Haywood's arrest were provided by the fruits of the prior warrantless search of defendant's person. The arrest, therefore, was incidental to the search and cannot be justified thereby. The search was bad from the start. What it produced cannot make it legal. The subsequently occurring arrest, even if valid without a warrant, could not change the character of the search.

■ While reasonable searches may be made incidental to a prior lawful arrest, an arrest may not be based upon a prior unlawful search. Walker v. United States, 125 F.2d 395 (5th Cir., 1942);[8] United States v. Frisch, 140 F.2d 660, 662 (5th Cir., 1944); John-

---

5. In addition to their personal knowledge and the information from their reliable informers as to defendant's activities, one of the informers had made a purchase of drugs from the defendant.

6. Agents of the Bureau of Narcotics may: "make arrests without warrant for violations of any law of the United States relating to narcotic drugs (as defined in section 4731) or marihuana (as defined in section 4761) where the violation is committed in the presence of the person making the arrest or where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation."
"Probable cause" used in the Fourth Amendment and "reasonable grounds" used in 26 U.S.C. § 7607 are substantially equivalent in meaning. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

7. Affirmed by order No. 20,059 (D.C.Cir., Oct. 6, 1966). See also Hicks v. United States, 382 F.2d 158 (D.C.Cir., 1967).

8. See also cases cited under Headnote 3, p. 396, of case report.

250

son v. United States, 333 U.S. 10, 68 S. Ct. 367, 92 L.Ed. 436 (1948).

Remaining is the question whether, absent a prior valid arrest which would justify a contemporaneous search of the defendant's person, the grant of authority contained in the premises search warrant would validate the search of defendant's person? We think not. A search warrant for a residence or other premises does not authorize the search of all persons who may be present. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); United States v. Festa, 192 F. Supp. 160, 163 (D.Mass., 1960).

The Motion is granted.