**UNITED STATES, Appellant,**

v.

**Jon F. CRICKENBERGER, Appellee.**

**No. 5472.**

District of Columbia Court of Appeals.

Argued Feb. 17, 1971.

Decided March 22, 1971.

402. The Government contends that the seizure was lawful, and alternatively, that it was denied a fair hearing through overbearing interjection by the hearing judge and a premature ruling on the motion to suppress. We hold that the court prematurely ruled on the illegality of the arrest and subsequent seizure. Since all of the evidence had not been presented when the motion to suppress was granted, a new hearing on the motion will be required to develop further facts as well as to insure fairness.

At the hearing, only one of the three arresting officers testified on the motion to suppress. Officer Payne testified that around 7:30 in the evening of August 2, 1970, he was riding on a police motor shooter when he observed a Ford Maverick parked in the 1500 block of N Street, N.W. Appellee, a passenger, and one Dunn, the driver, were seated in the car. According to Officer Payne's testimony, Dunn reacted to the officer's presence by starting the car as if to leave. This act aroused Officer Payne's suspicion, so he approached the vehicle and asked Dunn for his driver's license and registration.[1] Officer Payne testified that Dunn was shaking, nervous, and unable to respond to a question as to what was wrong. He observed a needle-like hole in Dunn's arm and blood running down, which Dunn was trying to rub off. Appellee was also shaking as if nervous and was drinking from a glass. The officer then asked Dunn to get out of the car. While Dunn was in the process of getting out of the car, Officer Payne motioned a passing scout car to stop.[2] He testified that he did so because he was alone "and didn't know what to·expect." Officer Payne observed two closed containers (resembling film canisters) on the seat. A subsequent search of the car

Barry W. Levine, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry and John E. Drury, III, Asst. U. S. Attys., were on the brief, for appellant.

Richard Whittington Whitlock, appointed by this court, for appellee.

Before FICKLING, NEBEKER and YEAGLEY, Associate Judges.

**YEAGLEY, Associate Judge:**

The United States brings this appeal from an order granting a pretrial motion to suppress narcotics seized in the course of an on-the-street encounter. Appellee and Russell Dunn were both charged with two counts of unlawfully possessing narcotics in violation of D.C.Code 1967, § 33–

---

1. Appellee did not challenge in the trial court the lawfulness of the request for driving credentials and did not there assert a sham motive on Payne's part.

2. The record does not reflect the nature of any conversation between Officer Payne and the officers in the scout car, or whether those officers assumed Payne was in need of assistance to make an arrest or to conduct further investigation.

revealed that the lid of one canister was charred, possibly from being used as a cooker in the use of heroin. Payne, in his testimony, referred to the charred top as a cooker, but it is not clear that he recognized it as such at the time he first saw it.

Dunn was searched by Officer Payne upon getting out of the car. Meanwhile, Officer Steele (one of the two officers from the scout car) "helped"[3] appellee get out of the car, and in the course of doing so, saw a syringe containing a clear liquid on the floor between the seat and the passenger door. After seeing the syringe, the canisters were then opened and found to contain 29 capsules—14 of which were full of a white powder. A field test conducted at the scene revealed the presence of illicit narcotics.

After counsel for appellee rested, the court inquired if the prosecution had "anything" to offer as evidence. The prosecutor said, "Your Honor, here, we have a police officer * * *" but the court interrupted, saying, "Do you want to do something with this, or do you want me to do it?"

Following a short colloquy, the court suddenly stated: "The motion is well taken. Motion's granted." The court thus refused to hear further testimony even though the facts at that point were obviously incomplete. It was Officer Steele who approached the passenger side of the car where the appellee was sitting. However, we do not have the benefit of his testimony as to what he saw, what he was told, if anything, and what he did. Furthermore, during the hearing and particularly on cross-examination, the court repeatedly interrupted the questioning of the witness with comments and leading questions calculated to put words in the mouth of the officer.

The Government at oral argument asserted, and our reading of the record suggests, that the manner in which the proceedings were conducted deprived the prosecution of a fair hearing. It is apparent, at the very least, that by cutting off the Government's case and repeatedly interjecting himself into the hearing in the manner revealed in the record, the hearing judge lost sight of the need for a detailed and objective factual inquiry.

Without waiting to hear from the Government's witness, the court proceeded to rule on the motion. The decision was precipitate and we think it is of no consequence that the prosecutor did not urge the judge to reopen the hearing. The manner in which the hearing was conducted,[4] and the obvious implication when the judge threatened to rule if the prosecution did not drop the charges, reveals a disposition to find against the Government under any circumstance. To eliminate suggested prejudgment of factual issues and "maintain an aura of impartiality,"[5] we direct that the hearing be held before another judge.

Reversed and remanded.

---

3. The word used by Officer Payne to describe Officer Steele's action. *See* note 2 *supra.*

4. When Officer Payne added that he also found marihuana seeds, the judge interjected: "Will they grow? * * * It's not contraband if they don't grow. Do you know whether it's against the law to have marihuana seeds?" To a negative response, the court chided: "Then you couldn't arrest anybody for that, could you?"

Later when the officer explained, "I was making a routine check", the judge replied, "Never mind that. Don't tell me that."
Even when the witness was describing the results of the field test of the white powder, the judge interrupted to supply the words, "Of the opiate family". The witness acquiesced, but we do not know what other words he might have used.

5. See United States v. Wyatt, U.S.App.D. C. (No. 24,106, decided March 2, 1971).