**UNITED STATES, Appellant,**

v.

**William MILLER, Appellee.**

No. 6470.

District of Columbia Court of Appeals.

Argued Sept. 25, 1972.

Decided Dec. 12, 1972.

Henry F. Greene, Asst. U. S. Atty., for appellant. Harold H. Titus, Jr., U. S. Atty., John A. Terry, James A. Adams, and Paul L. Friedman, Asst. U. S. Attys., were on the brief for appellant.

William A. Borders, Jr., Washington, D. C., for appellee.

Before KERN, NEBEKER and HARRIS, Associate Judges.

NEBEKER, Associate Judge:

This appeal by the United States [1] from an order granting a motion to suppress narcotics presents the question whether a person present on the premises during the execution of a search warrant based on

---

1. D.C.Code 1967, § 23–104 (a) (1) (Supp. V, 1972).

gambling activities may be searched and have seized from him a tinfoil packet containing what reasonably appeared to be heroin. We hold the search and seizure to have been valid and reverse the order of suppression.

The affidavit in support of the warrant stated that gambling activities and gambling paraphernalia, to include playing cards and dice, had previously been observed by undercover officers at this location. In executing the warrant[2] to search for a "gaming table and other related gambling paraphernalia", police officers knocked twice at the door of the premises, described as an after-hours club or bar, and announced that they were police officers with a search warrant. After hearing someone run away from the door, they waited approximately thirty seconds and then forced the door open. Upon entering, the officers informed the approximately twenty people who were there that they were going to conduct a search. The officers then patted down the occupants to determine if anyone had weapons or gambling paraphernalia. A search of appellee revealed a large tinfoil packet which was removed from his coat pocket by one of the officers. The record is unclear whether the packet was discovered through a pat or by an in-depth search. We will assume the latter to be the case. Appellee was subsequently charged with presence in an illegal establishment[3] and with possession of heroin.[4] At the hearing on the motion to suppress the trial court judge ruled that the officers had no authority to search the individuals present during the execution of the warrant and that since the warrant did not authorize seizure of narcotics this contraband could not be seized.

On this appeal, the Government contends (1) that during the execution of this search warrant the officers were authorized to search persons present for weapons and gambling paraphernalia; (2) that the statutory authority which authorized search of persons in the execution of a search warrant is constitutional notwithstanding an apparent contrary holding by the hearing judge;[5] and (3) that narcotics discovered while executing a search warrant for gambling paraphernalia may be seized.

■ In the execution of a validly obtained search warrant this court has held that an officer may seize property from the person of an individual on the premises to be searched in order to prevent the destruction of evidence. In Nicks v. United States, D.C.App., 273 A.2d 256 (1971), this court said:

"Because the warrant authorized a search of the premises for narcotics, we think it was not unreasonable for the officers, having observed appellant, to have supposed that at least some of the narcotics suspected to be on the premises was being secreted in her closed hand and was likely to be destroyed. Under such circumstances, the rule allowing contemporaneous searches is justified not only by the need to seize weapons which might be used to assault a police officer, . . . but also to prevent the destruction of evidence of crime, particularly where such evidence *is believed to be on the person* of the accused or under his immediate control. . . ." [*Id.* at 258, citing Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1963).] [Emphasis supplied; other citations omitted.]

2. Two previous search warrants had been issued for the search of these premises but had not been executed in the time permitted. The instant warrant was updated by information obtained subsequent to the expiration of the second warrant.

3. D.C.Code 1967, § 22–1515(a).

4. D.C.Code 1967, § 33–402.

5. That provision is D.C.Code 1967, § 23–524(g) (Supp. V, 1972), quoted in pertinent part, *infra.* It is noted that appellee had not requested a ruling on the constitutionality of § 23–524 and does not now attempt to support this gratuitous trial court holding.

*See also* Walker v. United States, 117 U.S.App.D.C. 151, 327 F.2d 597 (1963), *cert. denied,* 377 U.S. 956, 84 S.Ct. 1635, 12 L. Ed.2d 500 (1964); *cf.* Martone v. United States, 396 F.2d 229, 231–232 (1st Cir. 1968); Clay v. United States, 246 F.2d 298, 304 (5th Cir.), *cert. denied,* 355 U.S. 863, 78 S.Ct. 96, 2 L.Ed.2d 69 (1957). In a similar context it has been noted in Jones v. United States, 113 U.S.App.D.C. 14, 17 n. 10, 304 F.2d 381, 384 n. 10 (1962), that 18 U.S.C. § 2232 prohibits, *inter alia,* removal of matter subject to seizure.

Although *Nicks* concerned a situation where the seized evidence was being clenched in the accused's hand, reasonable application of our holding extends to the facts of this case. Where there is good cause to believe that evidence of a crime for which the police are authorized to search might be concealed or destroyed and such evidence "is believed to be on the person of the accused", Nicks v. United States, *supra,* 273 A.2d at 258, the officers are justified in making a search for this evidence. The record reveals that this was one of the expressed reasons for the search of those present.

■ In this case, the failure of the occupants to admit the police after they had given notice of their authority and purpose, the sounds of someone running from the door, and the fact that from previous observations there was probable cause to believe that extensive gambling was being carried on, combined to give the police reasonable cause to believe that the occupants possessed, concealed and were about to remove or destroy the evidence for which they had a search warrant. This belief

alone gave the officers sufficient grounds to search the individuals present. Nicks v. United States, *supra.* Moreover, D.C.Code 1967, § 23–524(g) (Supp. V, 1972) provides in part:

> "An officer executing a warrant directing a search of premises or a vehicle may search any person therein . . . (2) to the extent reasonably necessary to find property enumerated in the warrant which may be concealed upon the person." [6]

It is unfortunate that this trial court judge has again permitted his personal reactions to the manner in which a search warrant is executed to cloud his thinking and decision.[7] As revealed in the portions of the transcript quoted in the Appendix hereto, the trial judge's intervention in the proceedings below, to the point of saturation, regrettably indicates an apparent prejudgment of both credibility and facts where certain law enforcement activities are concerned.

The order suppressing the contraband is

Reversed.

## APPENDIX

"THE COURT: Now, when you knock on a door and make an announcement like that, is that the same thing as Popeye going in that bar and jacking everybody up?"

"A. No."

"THE COURT: I mean—you know—in terms of everybody dropping all their contraband on the floor or some place else so as not to get caught with it?"

---

6. "There are obviously reasonable limitations on this authority. A police officer could not under this provision search persons to locate a stolen television which was enumerated in the search warrant. However, an officer could under this provision search persons to locate narcotics which were enumerated in the search warrant and which could be secreted on a person." Rauh and Silbert, Criminal Law and Procedure: D.C. Court Reform and Criminal Procedure Act of 1970, 20 Am.U.L.Rev. 252, 262–263 (1970). The same may be said of gambling paraphernalia such as dice and other items capable of concealment in one's clothing.

7. United States v. Yates, D.C.App., 279 A.2d 516 (1971). *See also* United States v. Crickenberger, D.C.App., 275 A.2d 232 (1971).

"A. I guess it could happen that way."

"THE COURT: In other words, like a syringe and needle on the couch, could either have been dropped there by somebody?"

"A. That's right." (Tr. 16)

\* \* \* \* \* \*

"THE COURT: That's the reason I asked him about the French Connection and Popeye walks in and jacks up a bunch of people in the bar and says: Okay. Popeye is here. Everybody against the wall; and the stuff clatters to the floor, and if they knocked on the door and if they waited the thirty seconds they claimed they waited—you know—and somebody is in there and hears them say the police is coming or they see him coming in the door, he takes his works and throws them on the couch. One set of—one needle and syringe on the couch and that's going to establish that the place is a spot where drugs are being sold, used and dispensed. It's not possible."

"[THE PROSECUTOR]: That is a question for the jury. We are here to establish whether—involved, that this individual should be . . ."

"THE COURT: No. Because what they do is they get a warrant and they wait until they get a whole bunch of people in there and they go in and the first thing they do is jack up everybody in the place and search them."

"[THE PROSECUTOR]: The testimony was that they went in on a Saturday night. They didn't wait. . . ." (Tr. 31–32)

\* \* \* \* \* \*

"THE COURT: . . . for a gaming table and gambling paraphernalia. The first thing they do when they get inside is that they round up everybody inside the place and put them all in one spot, and they stand in there with shotguns loaded with double ought buck and order everybody over there, and the officer very candidly admitted, and the truth of it is plain, that nobody is free to leave and they are going to search everybody that's in there, as well as search the premises, . . ." (Tr. 34)

\* \* \* \* \* \*

"THE COURT: And what I'm saying to you is that the motion is granted. I'm satisfied that those officers went in there—that many officers going in there, particularly in light of the fact that twice before they had warrants that they never executed, because, as you tell me yourself, it was based on particular information. What you tell me was that there was not enough people in there—there wasn't enough action, so they don't issue it. They wait until they get action and then issue a search warrant—execute the search warrant and go in there with shotguns loaded with buck ought and line the twenty people they find inside there up and search them." (Tr. 39)

\* \* \* \* \* \*

"THE COURT: [B]ut what you got here plain and simple is the execution of a warrant for a gambling premise, and at a certain point that you pick out, when the action is going on, they rush in—eighteen officers with shotguns, sawed-off barrel shotguns, an inch longer than a sawed-off barrel shotgun, loaded with buck ought, and everybody in this premises is under arrest. I don't care how you look at it. You don't go in with shotguns loaded with double buck and search them, and then argue no, they are not under arrest. We are just carrying out a search in accordance with the warrant." (Tr. 42–43)