Roland J. WHITE, Appellant,

v.

UNITED STATES, Appellee.

No. 84–1197.

District of Columbia Court of Appeals.
Submitted June 4, 1985.
Decided July 10, 1986.

Keith Winston Watters, Washington, D.C., appointed by this court, was on brief, for appellant.

Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Thomas J. Tourish, Jr., and Gerald W. Heller, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before MACK, TERRY and ROGERS, Associate Judges.

TERRY, Associate Judge:

Appellant was convicted of possession of heroin, a controlled substance, in violation of D.C.Code § 33–541(d) (1984 Supp.). His sole contention on appeal is that the court erred in denying his motion to suppress evidence. We remand for further findings of fact.

I

On March 26, 1984, Metropolitan Police Officer Wade J. Sovonick applied for a warrant to search a two-story town house at 933 Fifth Street, S.E.[1] The following day Sovonick and several other officers executed the warrant. While doing so, Sovonick searched appellant, one of five persons in the house, and discovered in his pants pocket five plastic packets containing a white powder. Appellant was placed under arrest and charged with possession of a controlled substance. Chemical analysis later established that the white powder was heroin.

Appellant filed a motion to suppress the packets of heroin, claiming that they were the product of an illegal search. The government, opposing the motion, argued that the police, by virtue of the warrant, had authority to search not only the premises but any person on the premises as well. Alternatively, the government maintained that the police had probable cause to believe that appellant possessed evidence which they were entitled to seize, and that the search was lawful on this basis also.

At the hearing on the motion, Officer Sovonick was the government's only witness. He testified that upon arriving at the town house, he and another officer went around to the rear to make sure that no one fled through the back door. Almost immediately he heard his fellow officers knock at the front door and announce their presence, and at that precise moment he saw the back door fly open. Appellant was standing in the doorway. Sovonick identified himself as a police officer, escorted appellant into the kitchen, and searched him. In appellant's pockets he found two letters addressed to appellant at that address, the five packets of heroin, and $355 in cash.

Appellant took the stand and disputed Sovonick's testimony. He claimed that the police officers kicked in both the front door and back door of the house and told him and everyone else to "freeze." Then one of the officers asked him for identification, and appellant handed over his wallet. The officer took everything out of his wallet, including the two letters, then searched him and discovered the heroin.

The court did not resolve the factual issues relating to the officers' entry into the house and the way in which the search was conducted. It upheld the search on other grounds, stating:

> [T]he Court finds that because of the items that the officers were looking for,

1. In his affidavit in support of the application for the warrant, Sovonick stated:

[W]ithin the past 72 hours, [I] met with a source of information who ... stated ... that it had just returned from 933 5th St. SE where an individual known as Bunny was engaged in the distribution of heroin. The source went on to state further that it witnessed at least five instances in the premises where the female known as Bunny sold small plastic packets containing

white powder to individuals who came to the front door, for prices ranging between $35.00 and 40.00. These transactions were seen by the source in the living room of the above address within 24 hours of the meeting with the Affiant. The address is known by the Affiant from a past investigation where on 8/28/82, he obtained a DC Superior Court Search Warrant for dangerous drugs (phenmetrazine).

because of finding the Defendant on the premises—the Defendant's testimony is that he was merely a sometimes visitor there, but on occasion he does receive mail there, and on occasion he does spend the night there. There is no evidence that the police knew his name or knew necessarily that he would be there when the search warrant was executed.

Finding him there in the kitchen or at the back door, one or the other, and looking for something that could possibly be on his person while he was in the premises, and not knowing who he was, nor having time then to run [and] get a warrant for a search of him or arrest of him, the Court finds that there were exigent circumstances justifying a search of the Defendant at that point. He was in the premises. He was certainly capable of concealing the evidence that they were looking for, and as proof of that fact he testified that he did have at least five, perhaps six, packets in his pocket or pockets at the time.

Relying on the authority of *United States v. Miller*, [298 A.2d 34 (D.C. 1972)], [*Thomas v. United States*, 352 A.2d 390 (D.C.1976)] ... there being no evidence [that the house] was a public place but rather was a private dwelling, apparently in the control of, partial or co-control of the defendant, [the] motion to suppress is denied.

Appellant waived his right to a jury trial, and the court, on stipulated facts, found appellant guilty of possession of a controlled substance.

## II

D.C.Code § 23–524(g) (1981) provides in pertinent part:

An officer executing a warrant directing a search of premises ... may search any person therein (1) to the extent reasonably necessary to protect himself or others from the use of any weapon which may be concealed upon the person, or (2) to the extent reasonably necessary to find property enumerated in the warrant which may be concealed upon the person.

The government relies on this statute to justify the search which yielded the five packets of heroin. Appellant contends, on the other hand, that the statute is unconstitutional, citing the Supreme Court decision in *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). We decline to reach the constitutional issue, opting instead for a remand in which the trial court shall make findings of fact and then rule on the motion to suppress *de novo*.

In *Ybarra* the Court had before it an Illinois statute which, like D.C.Code § 23–524(g), authorized law enforcement officers who were executing a search warrant to search any person on the premises in order to prevent the destruction or concealment of anything described in the warrant. The police in that case had obtained a warrant to search a tavern for narcotics. While they were executing the warrant, one of the officers frisked Ybarra, a patron of the tavern, and felt a cigarette pack "with objects in it." The officer seized the cigarette pack and found inside it six tinfoil packets containing heroin. Ybarra was convicted of possession of a controlled substance, and on appeal he argued that the search violated his Fourth Amendment rights. In holding the statute unconstitutional as applied to Ybarra's case, the Supreme Court observed:

Upon entering the tavern, the police did not recognize Ybarra and had no reason to believe that he had committed, was commiting, or was about to commit any offense under state or federal law. Ybarra made no gesture indicative of criminal conduct, made no movements that might suggest an attempt to conceal contraband, and said nothing of a suspicious nature to the police officers. In short, the agents knew nothing in particular about Ybarra, except that he was present, along with several other customers, in a public tavern at a time when the police had reason to believe that the bartender would have heroin for sale.

444 U.S. at 90–91, 100 S.Ct. at 341–42. The Court went on to hold:

> [A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.... Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be.

*Id.* at 91, 100 S.Ct. at 342 (citation omitted).

The government refers us to several cases in which this court, applying D.C. Code § 23–524(g), has upheld searches even though, as in this case, the persons searched were neither named nor described in the warrant or its supporting affidavit. *Thomas v. United States,* 352 A.2d 390 (D.C.1976); *United States v. Graves,* 315 A.2d 559 (D.C.1974); *United States v. Miller,* 298 A.2d 34 (D.C.1972); *Nicks v. United States,* 273 A.2d 256 (D.C.1971).[2] All of those cases, however, were decided before *Ybarra.* Since *Ybarra* has now become the controlling case, we would have to determine whether *Nicks, Miller, Graves,* and *Thomas* met the requirements of *Ybarra* if they came before us today; that is, we would have to decide the constitutionality of section 23–524(g) as applied to each defendant in each of those cases.

We need not re-examine those four decisions now. Even if we concluded that all four were compatible with *Ybarra,* we could not rely on them to sustain the search in this case because some of the material facts are still in dispute. Appellant, like Ybarra, was present in a building which the police had a warrant to search. Although the building was a private home rather than a public tavern, as in *Ybarra,* this fact did not give the police probable cause to believe that appellant, one of five persons in the house at the time of the search, was committing a crime or concealing property which they were entitled to seize.[3] *See People v. Gross,* 124 Ill.App.3d 1036, 80 Ill.Dec. 328, 465 N.E.2d 119 (1984); *Lippert v. State,* 664 S.W.2d 712 (Tex. Crim.App.1984); *State v. Broadnax,* 98 Wash.2d 289, 654 P.2d 96 (1982). On the other hand, there is testimony in the record which would support a finding that appellant attempted to flee when the officers knocked and announced their purpose. If the trial court were to credit this testimony and find that appellant did in fact attempt to flee (or that the police reasonably believed he was attempting to flee), the ensuing search might well be lawful. *See People v. Ortiz,* 103 A.D.2d 303, 479 N.Y.S.2d 548 (1984) (search of defendant, who was neither named nor described in the search warrant or its supporting affidavit, upheld when defendant fled into another room upon the officers' entry), *aff'd,* 64 N.Y.2d 997, 478 N.E.2d 187, 489 N.Y.S.2d 46 (1985); *Washington v. State,* 660 S.W.2d 533, 535 (Tex.Crim.App.1983) (search upheld when defendant entered premises during search and "ran away from the officers and continued to run when told to stop"); *cf. Tobias v. United States,* 375 A.2d 491, 494 (D.C.1977) (flight is an "important factor" in probable cause determination). *See also Michigan v. Summers,* 452 U.S. 692, 705, 101 S.Ct. 2587, 2595, 69 L.Ed.2d 340 (1981) ("a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a

---

**2.** *See also United States v. Johnson,* 154 U.S.App. D.C. 393, 475 F.2d 977 (1973); *Walker v. United States,* 117 U.S.App.D.C. 151, 327 F.2d 597 (1963), *cert. denied,* 377 U.S. 956, 84 S.Ct. 1635, 12 L.Ed.2d 500 (1964).

**3.** The affidavit in support of the warrant indicated that a woman named "Bunny" was selling heroin from the house, but it made no mention of anyone else. Furthermore, although the government makes much of the fact that appellant was "no mere visitor" to the house, there is nothing in the record to suggest that the police were aware of this fact when they arrived to execute the warrant.

proper search is conducted" (footnotes omitted)).

On the present record we cannot decide the Fourth Amendment issue. Before the search in this case can be upheld, the trial court must resolve the conflicts in the testimony regarding the circumstances of the search, including the question of whether appellant attempted to flee when the officers knocked on the door. We therefore vacate the judgment of conviction and remand this case to the trial court, as suggested by the government. We direct that court to make the necessary factual findings, and thereafter to rule *de novo* on the motion to suppress in light of what we have said in this opinion. If the court upholds the search and seizure, it shall enter a new judgment of conviction, from which appellant shall have the usual right of appeal. *See* D.C.Code § 17–306 (1981).[4]

*Vacated and remanded.*

---

**4.** Section 17–306 authorizes this court to "affirm, modify, vacate, set aside or reverse any order or judgment ... [or to] remand the cause and direct the entry of such appropriate order, judgment, or decision, or require such further proceedings to be had, as is just in the circumstances."