**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Oscar O. NELSON, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Willie WYNDER, a/k/a Willie Winder,
Defendant-Appellant.**

**Nos. 71–1155, 71–1156.**

United States Court of Appeals,
Sixth Circuit.

April 21, 1972.

This appeal involves two unauthorized and warrantless police searches of a dwelling place in the nighttime. Concerning these two searches we find no "exigent circumstances" authorizing disregard of the Fourth Amendment's [1] prohibition against warrantless searches of homes. Products of the obviously illegal searches (stolen postal money orders) were introduced at trial of appellants after a motion to suppress had been denied.

We reverse.

Appellants were convicted after a jury trial in the United States District Court for the Western District of Tennessee, Western Division, on an indictment charging:

"On or about March 25, 1970, in the Western District of Tennessee, Western Division,

WILLARD FREDERICK MANUEL,
OSCAR O. NELSON,
WILLIE WYNDER,
  a/k/a Willie Winder

defendants, with intent to convert same to their own use, knowing same to have been stolen, unlawfully, wilfully and knowingly did receive, conceal and retain certain goods and property of the United States of America, to wit: one-hundred and seventy-five (175) postal money order forms, one (1) validating stamp for the United States Post Office at Bourbon, Mississippi, ten (10) limitation stamps in the amounts of $2.00, $5.00, $10.00, $20.00, $40.00, $50.00, $60.00, $80.00, $90.00 and $100.00, respectively, and one-hundred and one United States Postage Stamps, said property being of a value in excess of one-hundred ($100.00) dollars; in violation of Title 18, United States Code, § 641 and Title 18 United States Code, § 2."

Ronald D. Krelstein, Memphis, Tenn. (Court Appointed), for appellant Nelson.

Thomas A. Buford, Memphis, Tenn. (Court Appointed), for appellant Wynder.

Larry E. Parrish, Memphis, Tenn., for appellee; Thomas F. Turley, Jr., U. S. Atty., Memphis, Tenn., on brief.

Before EDWARDS, McCREE and MILLER, Circuit Judges.

EDWARDS, Circuit Judge.

The concept that a man's home is his castle is an ancient one. It has had a profound effect upon our legal history. Its application to the innocent and the guilty, the rich and the poor is no figment of the imagination of modern-day judges.

"The poorest man may in his cottage bid defiance to all the force of the Crown. It may be frail; its roof may shake; the wind may blow through it; the storms may enter, the rain may enter,—but the King of England cannot enter; all his forces dare not cross the threshold of the ruined tenement!" William Pitt, Earl of Chatham, Speech on the Excise Bill.

[1] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S.Const. amend. IV.

The proofs of appellants' guilt in this case are very substantial. We recite the facts from the point of view favorable to the government, which the jury obviously believed. United States v. Glasser, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

On March 27, 1970, shortly after midnight, a man identified at trial as appellant Nelson appeared at the Alamo Plaza Motel in Memphis, Tennessee, and registered for himself and a "Mr. and Mrs. Garnett" in two adjoining rooms. Nelson's nervous conduct, the fact that the Mississippi license number on the car of the parties differed from that supplied by Nelson, the fact that the room clerk thought one of Nelson's companions was wearing a wig, and the fact that the three backed their car up to the motel and then ran with their luggage to the room aroused the room clerk's suspicions. When Nelson came back and insisted on leaving the key before the three of them went "out on the town," the room clerk twice entered the rooms and searched them. He then hailed a passing police car and showed a police lieutenant a memorandum he had typed concerning his observations:

"Entered, left 4 bags in Room 706----

    3 overnight bags of whiskey,
    sack of money, tools and
    guns, one some clothes inside.

    1 large suitcase with a
    cutting torch inside.

----------------------------------

rented room at 2:00 a.m., 3-27-70,
left bags and returned keys to office,
~~~~~~~~~~~~~ at 2:10----

Told Gibson that he could keep the
keys as long as he had the rooms
rented, and he stated, "I'd rather
not have them on me."

[A5713]

A police stakeout was immediately set upon the two rooms concerned. The police lieutenant then twice entered the rooms in question with the room clerk and they searched the baggage which it contained. Among other things he found the blank postal money orders which were ultimately the subject of the indictment and of the motion to suppress. On the second search he also found a BankAmericard in the name of Thelma Turner, with a Mississippi address. Inquiry to the National Crime Information Center concerning the numbered postal money orders, the gun and the BankAmericard did not produce any information. But inquiry with Mississippi authorities in the county referred to on the BankAmericard did produce information that a post office burglary had occurred in the vicinity of Leland, Mississippi, in which a large number of postal money orders had been taken.

After the two warrantless police searches had uncovered conclusive proof of the commission of the crime for which appellants have now been convicted, a Memphis police inspector who had arrived on the scene sought a search warrant by an affidavit which referred to the post office burglary near Leland, Mississippi, and listed the stolen money orders among the first of the items sought to be seized. The affidavit for the search warrant also listed items about which the motel manager had given information prior to the illegal police searches. The warrant was issued, appellants were arrested outside the motel, the police entered the rooms and seized the money orders and other items. Appellants were tried and convicted as outlined above.

■ It is clear, of course, that the motel manager's consent to and participation in the two warrantless police searches did not serve to waive appellants' constitutional rights in relation to their

rented rooms. Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951).

In this case there were five searches of residential premises. Only the last was protected by a search warrant.

■ The first two searches were conducted by the motel manager. His testimony, which was accepted by the District Judge, was that he acted on his own initiative and not as a police agent. These searches were probably violations of state trespass laws, but the Fourth Amendment's prohibition against unreasonable searches is addressed only to state action:

> "The Fourth Amendment gives protection against unlawful searches and seizures, and as shown in the previous cases, its protection applies to governmental action. Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies; as against such authority it was the purpose of the Fourth Amendment to secure the citizen in the right of unmolested occupation of his dwelling and the possession of his property, subject to the right of seizure by process duly issued." Burdeau v. McDowell, 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921).

The District Judge held in effect that the police were entitled to employ the evidence uncovered by these two searches and we agree. Burdeau v. McDowell, *supra;* United States v. McGuire, 381 F.2d 306 (2d Cir. 1967).

■ The District Judge also held, however, that the information derived from the first two searches by the motel manager furnished reasonable cause for the warrantless police searches and the seizure of the evidence admitted at trial.

He relied in part upon his view that the appellants might at any time have returned and removed the evidence.

■ As we have noted, however, from the moment of police arrival on the scene up to the actual arrests, there had been a police cruiser (later two) "staked out" in surveillance of the motel rooms. Further, the "exigent circumstances" exceptions which allow warrantless searches and seizures are narrowly construed, particularly when they are sought to be applied to residential premises.

■ These exceptions to the general requirement of a search warrant include the following categories. But none of them appear applicable to the facts of this case.

1) These searches were not searches of an automobile. *See* Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

2) These searches were not incident to lawful arrests. *See* Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

3) These searches were not based on the plain view doctrine. *See* Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Ker v. California, 374 U.S. 23, 43, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

4) They were not based on consent. *See* Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); Zap v. United States, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477, rehearing granted

and reversed on other grounds, 330 U.S. 800, 67 S.Ct. 857, 91 L.Ed. 1259 (1947).

5) They were not based upon an immediate threat to life. *See* Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968); Wayne v. United States, 115 U.S.App.D.C. 234, 318 F.2d 205 (1963); United States v. Barone, 330 F.2d 543 (2d Cir. 1964).

6) They did not occur while the officers were in hot pursuit of a fleeing felon. *See* Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

On this point our court adheres unanimously to the view of such exceptions recently stated by Mr. Justice Stewart in his opinion for the Court in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971):

> "Thus the most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' [5]

> 5. Katz v. United States, 389 U.S. 347, 357, [88 S.Ct. 507, 514, 19 L.Ed.2d 576].

> The exceptions are 'jealously and carefully drawn,' [6] and there must be 'a

> 6. Jones v. United States, 357 U.S. 493, 499, [78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514].

> showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.' [7]

> 7. McDonald v. United States, 335 U.S. 451, 456, [69 S.Ct. 191, 193, 93 L. Ed. 153].

> '[T]he burden is on those seeking the exemption to show the need for it.' [8]

> 8. United States v. Jeffers, 342 U.S. 48," 51, 72 S.Ct. 93, 95, 96 L.Ed.2d 59].

Coolidge v. New Hampshire, *supra* at 454–55, 91 S.Ct. at 2032.

What has given us most concern in this case, however, is what effect, if any, the search warrant, issued after the two unconstitutional police searches, might ap-

propriately be given in authorizing the admission into evidence of the postal money orders. It is clear that there was evidence available to the police from the moment of their arrival at the motel concerning appellants' possession of tools (including a cutting torch), a sack of money, and guns—evidence more than sufficient to arouse keen (and appropriate) police suspicion. What the police did not know, however, was that a crime had actually been committed and that appellants were in possession of the loot. These two vital aspects of information were secured by the two unconstitutional searches.

The affidavit filed by the inspector did not rely primarily upon the legally obtained information. It relied directly upon the information illegally obtained by the two warrantless searches made by the police lieutenant first on the scene:

> "AFFIDAVIT FOR SEARCH
> WARRANT
> STATE OF TENNESSEE,
> COUNTY OF SHELBY,
> "PERSONALLY APPEARED
> BEFORE ME,
> C. R. Boatright
> and makes oath that there is probable cause for believing that the laws of the State of Tennessee have been and are being violated by:

> Unknown occupants

> "BY having in his or her possession, contrary to the laws of the State of Tennessee: Postal Money Orders, U.S. Savings Bonds, coin collection, guns, any stolen contraband, taken in a burglary in Leland, Mississippi, Washington County in the last three days, and burglary tools.

> "Affiant's reason for believing that there is probable cause: The affiant has received information from a reliable source, this source having given other information proven to be correct by independent investigation that said source has seen in the past ten hours (10) Postal Money Orders, U. S.

Savings Bonds, coin collection, guns and burglary tools being kept at the below described premises.

"IN or upon the following described property, situate in the City of Memphis, County of Shelby, State of Tennessee, to wit: The first multiple unit on the north side of Summer west of Lester, the second door from the south end of the unit, this door is painted blue with orange awning over the door, the door facing west into the parking area. Commonly known as the Alamo Plaza Motel room 7034 located at 2862 Summer, Memphis, Shelby County, Tennessee.

"AFFIANT, therefore, asks that a search warrant issue to search the person and premises described for evidence of the aforementioned law violation, where the affiant believes the said contraband to be.

/s/ C. R. Boatright
Affiant

"Subscribed and sworn to before me this 27 day of March 1970

/s/ BERNIE WEIMAN
Judge

"Officer to whom issued: C. R. Boatright
Date: March 27, 1970    Time: 9:05 A.M."

It is clear to us that the crime itself as referred to in this affidavit became known to the Memphis police only through the unconstitutional searches and that the Postal Money Orders which appellants were convicted of possessing became known only through the two unconstitutional searches. There is no "independent source" for the fruit of this "poisonous tree." *See* Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

■ Under these circumstances we can see no basis for holding that the warrant obtained by Inspector Boatright was valid or that it would have issued absent the critical information derived from the two unconstitutional police searches.

Further, if it be suggested that after excision of the information derived from the illegal police searches there still remained enough information to justify issuance of a search warrant for burglar tools under Tennessee law, I concur with the analysis of this issue set forth in the concurring opinion of Judge Miller.

We recognize that appellees rely upon authority from several Courts of Appeals. Howell v. Cupp, 427 F.2d 36 (9th Cir. 1970); James v. United States, 135 U.S.App.D.C. 314, 418 F.2d 1150 (1969); United States v. Sterling, 369 F.2d 799, 802 (3d Cir. 1966). *Cf.* Clay v. United States, 246 F.2d 298, 304 (5th Cir.), cert. denied, 355 U.S. 863, 78 S.Ct. 96, 2 L.Ed. 2d 69 (1957). We think these cases are markedly different as to facts and inapposite as to our instant problem. They are really an application of the harmless error rule—a rule with which we certainly do not disagree.

But they differ factually from our instant case in at least three major aspects:

1) None of them involved warrantless police invasion of a dwelling.

2) In each of them the warrant ultimately secured could appropriately have been issued if the improperly acquired information had been omitted.

3) In three of them no evidence attributable to an unconstitutional search was admitted at trial. In Howell v. Cupp, *supra*, the court held that untainted evidence in the affidavit standing alone was sufficient to validate the warrant.

■ Of course, the fact that probable cause might have been (but was not!) presented from the facts known to the Memphis police before the two warrantless police searches does not serve to validate an otherwise illegal search. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958); Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1932); Agnello v. United

States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925).

We are concerned by the fact that the unconstitutional police intrusions in this case now occasion our setting aside judgments of conviction of persons who had been found guilty of crime in an otherwise lawful jury trial. But the alternative of affirmance on this record would in our judgment lead to widespread disregard of one of the most cherished rights of the American people. Constitutional protection of the home cannot be maintained if police can freely enter without judicial warrant, search at will, and then employ any information thus found to secure a judicial search warrant and on its strength seize and introduce in evidence the product of the original unconstitutional invasion of the home.

In 1925 Mr. Justice Butler, writing for a unanimous Supreme Court, decided the fundamental issue which we face:

"While the question has never been directly decided by this court, it has always been assumed that one's house cannot lawfully be searched without a search warrant, except as an incident to a lawful arrest therein. Boyd v. United States, 116 U.S. 616, 624 *et seq.*, 630 [6 S.Ct. 524, 29 L.Ed. 746]; Weeks v. United States, *supra*, [232 U.S. 383] 393, [34 S.Ct. 341, 58 L.Ed. 652]; Silverthorne Lumber Co. v. United States, *supra*, [251 U.S.] 391, [40 S.Ct. 182]; Gouled v. United States, 255 U.S. 298, 308 [41 S.Ct. 261, 65 L.Ed. 647]. The protection of the Fourth ·Amendment extends to all equally,—to those justly suspected or accused, as well as to the innocent. The search of a private dwelling without a warrant is in itself unreasonable and abhorrent to our laws. Congress has never passed an act purporting to authorize the search of a house without a warrant. On the other hand, special limitations have been set about the obtaining of search warrants for that purpose. Thus, the National Prohibition Act, approved October 28, 1919, c. 85, Tit. II, § 25, 41 Stat. 305, 315, provides that no search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor or is in part used for business purposes, such as store, shop, saloon, restaurant, hotel, or boarding house. And later, to the end that government employees without a warrant shall not invade the homes of the people and violate the privacies of life, Congress made it a criminal offense, punishable by heavy penalties, for any officer, agent or employee of the United States engaged in the enforcement of any law to search a private dwelling house without a warrant directing such search. Act of Nov. 23, 1921, c. 134, § 6, 42 Stat. 222, 223. Safeguards similar to the Fourth Amendment are deemed necessary and have been provided in the constitution or laws of every State of the Union. We think there is no state statute authorizing the search of a house without a warrant; and, in a number of state laws recently enacted for the enforcement of prohibition in respect of intoxicating liquors, there are provisions similar to those in § 25 of the National Prohibition Act. Save in certain cases as incident to arrest, there is no sanction in the decisions of the courts, federal or state, for the search of a private dwelling house without a warrant. Absence of any judicial approval is persuasive authority that it is unlawful. See Entick v. Carrington, 19 Howard's State Trials, 1030, 1066. Belief, however well founded, that an article sought is concealed in a dwelling house, furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause. See Temperani v. United States [9 Cir.,] 299 F[ed]. 365; United States v. Rembert, [D.C.,] 284 F[ed]. 996, 1000; Connelly v. United States, [D.C.,] 275 F[ed]. 509; McClurg v. Brenton, 123 Ia. 368, 372, [98 N.W. 881]; People v. Margolis, 220 Mich. 431, [190 N.W.

306]; Childers v. Commonwealth, 198 Ky. 848, [250 S.W. 106]; State v. Warfield, 184 Wis. 56, [198 N.W. 854]. The search of Frank Agnello's house and seizure of the can of cocaine violated the Fourth Amendment." Agnello v. United States, 269 U.S. 20, 32–33, 46 S.Ct. 4, 6–7, 70 L.Ed. 145 (1925).

*Agnello* has never been overruled and has recently again been relied upon. *See* Vale v. Louisiana, 339 U.S. 30, 34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970).

The judgments of conviction are reversed.

McCREE, Circuit Judge (dissenting).

I do not agree with either opinion requiring reversal of the convictions. Since the differences between my brothers and me can be understood only by reference to the facts, I set them forth in pertinent detail.

The events leading to appellants' arrest and the searches and seizures of which they complain occurred during the early morning hours of March 27, 1970. Nelson and Wynder, accompanied by a third person who was dressed as a woman, drove into the Alamo Plaza Motel in Memphis, Tennessee. Nelson entered the motel office and paid in advance for two adjoining rooms. The room clerk, George R. Parham, observed that Nelson appeared to be nervous while waiting for Parham to register another person, and that Nelson walked "all the way to the front office" to watch a passing police car until it was out of sight. Parham's suspicions were aroused, and he therefore placed Nelson and his companions in two rooms clearly observable from the motel office.

When appellants drove from the registration office to their rooms, Parham observed that Nelson had misstated the license number of their automobile. After parking their vehicle so that the license number was no longer visible, the three proceeded hurriedly and surreptitiously to move objects from its trunk into their rooms. Shortly thereafter, the three emerged. Appellants'

companion, who had been dressed as a woman, and who was registered as the wife of Nelson's male companion, at this time was dressed as a man and appeared to be a man. Nelson returned the room keys to the office to be held until his return, and said that he would "rather not have them on me." He also paid for a second night's lodging and announced that they were "going out on the town" and would be back.

After appellants had departed, Parham entered their rooms because, as the District Court found, his suspicions had been aroused, and opened their luggage. He found a cutting torch, still hot as if from recent use, a sack of money, what appeared to be burglar's tools, one or more guns, miscellaneous clothing, and a quantity of whiskey. Parham then stopped a passing police car and informed the officers therein of his suspicions and discoveries. One of the officers notified Lieutenant Billy G. Brooks of the Memphis Police Department. When Lieutenant Brooks arrived at the motel, Parham told him what had occurred and gave him a paper on which he had drawn a picture of the luggage and had typed a short statement of what had occurred and a list of the items he had observed:

> 3 overnight bags of whiskey, sack of money, tools and guns, one some clothes inside [sic].

> 1 large suitcase with a cutting torch inside.

In an effort to obtain an identifying number from the gun or from some other item in the room, Brooks and Parham entered the room together. During their joint search they discovered a large number of money orders in one of the bags. Brooks noted the serial number of one of the money orders and the serial number of a gun and they left the room. Brooks then attempted to determine by telecommunication whether the gun or money order had been reported stolen. When it could not be determined whether they had been stolen, Brooks and Parham reentered the room where they had found the bags in order to examine the contents of a wallet they had found in the suit-

case. They discovered a lady's identification item, a driver's license and a credit card. Using that information, the police contacted the sheriff's office in the county indicated on the identification card and learned that some of the property found in the motel room had been stolen. Brooks then summoned the burglary officers on duty at that time who, after consulting with Brooks, called their commanding officer, Inspector Boatright.

When Inspector Boatright arrived at approximately 6:00 a. m., he ordered his officers to watch the rooms and left to obtain a search warrant. At approximately 9:00 a. m., Boatright secured the warrant on the basis of his sworn statement that he had:

. . . received information from a reliable source, this source having given other information proven to be correct by independent investigation that said source has seen in the past ten hours (10) Postal Money Orders, U. S. Savings Bonds, coin collection, guns and burglary tools being kept at the below described premises.

Boatright thereupon rejoined the officers at the motel and learned that appellants had returned and were in their rooms. At approximately 10:00 a. m. appellants walked out of their rooms and were arrested by the officers who then executed the search warrant and seized the luggage and its contents.

Pursuant to a motion to suppress the evidence seized at the motel, the District Court held an evidentiary hearing and entered an order, on August 3, 1970, denying the motion on the ground that the searches conducted by Parham, and by Parham and Brooks together did not offend the Constitution because there existed probable cause and exigent circumstances which made a warrant unnecessary. My brothers and I agree that the joint searches by Brooks and Parham were unconstitutional.[1] Nevertheless, I would sustain the convictions because I regard the incriminating evidence as the independent product of the lawful execution of a valid search warrant.

I agree that the property of occupants of motel rooms is entitled to the protection of the Fourth and Fourteenth Amendment prohibition of unreasonable searches and seizures. E. g. Stoner v. California, 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1963); United States v. Jeffers, 342 U.S. 48, 51–52, 72 S.Ct. 93, 96 L.Ed. 59 (1951). But the protection is against the acts of public officials and not against trespasses by private persons. E. g. Burdeau v. McDowell, 256 U.S. 465, 475, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). Accordingly, the initial entry and search by Parham did not offend the Constitution unless Parham's actions are attributable to the government.

In rejecting the contention that Parham was acting on behalf of the police, the court stated:

Even though Parham was a trespasser, we do not believe that this trespass is attributable to the police because Parham was not acting as an agent of the police at the time he discovered the evidence. It is true that he had furnished the police with reliable information in the past, but there is no evidence that the police even knew of this situation investigated by Parham until after he had done so and there is no evidence that he had any general authority from the police to make investigations for them . . .. .

These conclusions are supported by the record, and we sustain them.

However, Lieutenant Brooks could not lawfully conduct a warrantless search of the rooms in the absence of unusual justifying circumstances requiring an im-

---

1. I observe that the six categories of exigent circumstances set forth in Judge Edwards' opinion by no means encompass all possible exigencies which might justify a warrantless search. Under some circumstances, the fact that the premises to be searched are a motel room might be relevant to an asserted justifying exigency. Here, however, the premises were secured by police officers from the time Parham first informed them of his suspicions.

mediate search. Appellee contends, and the District Court concluded, that Brooks had a right to search without a warrant because it would have been difficult to have obtained a warrant at the time of the search and because the return of the suspects was imminent. It is clear, however, that Brooks did not enter the rooms to seize evidence to prevent its destruction, nor to protect the arresting officers by seizing the weapons to prevent recovery by the suspects. Accordingly, I need ' not consider whether the stated reasons might, under some circumstances, justify a warrantless search of a motel room. Brooks' intrusions were clearly not justified. *See* United States v. Jeffers, *supra,* 348 U.S. at 51–52, 72 S.Ct. 93.

The motel proprietor's consent could not validate an otherwise illegal search. Stoner v. California, *supra,* 376 U.S. at 489–90, 84 S.Ct. 889. Accordingly, the fact that Parham assisted Brooks in his search did not make it legal. And it does not matter whether the additional information was obtained by Brooks or by Parham since constitutional limitations on official conduct apply equally to searches and seizures by otherwise private citizens acting in concert with the police. *Cf.* Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949); Corngold v. United States, 367 F.2d 1, 5–6 (9th Cir. 1966); *see also* Annot., 36 A.L.R.3d 553, 590–99 (1971).[2]

In this case, however, the evidence introduced at trial was seized at the time of appellants' arrest, pursuant to the execution of the search warrant obtained by Boatright. We must therefore determine whether the warrant was valid and, if it was, whether the illegal searches conducted by Brooks require the exclusion of evidence seized in execution of the warrant. It is this question alone which divides the court.

I observe that "carrying burglarious instruments" is a felony under Tenn. Code Ann. § 39–908, and that the warrant was issued on the basis of probable cause to believe that this statute was being violated. The information obtained by Brooks in the unconstitutional searches was not necessary to enable Boatright to state in his affidavit that he had received information that

> said source has seen in the past ten hours (10) . . . a [sack of money,] guns and burglary tools being kept at the below described premises.

Thus the search warrant affiant's statements, which are the products of Parham's initial trespass and subsequent report, and not the result of official misconduct, were sufficient to support the issuance of the warrant. *See* United States v. Harris, 403 U.S. 573, 586–601, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (Harlan, J., dissenting); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509,. 12 L.Ed.2d 723 (1964). As three other circuits have held, the fact that information unlawfully obtained was also included in the affidavit does not, in *my* view, require exclusion of the evidence seized upon authority of the warrant. Howell v. Cupp, 427 F.2d 36 (9th Cir. 1970); James v. United States, 135 U.S.App.D.C. 314, 418 F.2d 1150 (1969); United States v. Sterling, 369 F.2d 799, 802 (3d Cir. 1966); *cf.* Clay v. United

---

**2.** The cases upholding searches conducted under circumstances similar to those in which Brooks and Parham conducted their joint searches may be divided into two groups: those in which a private party discovered the evidence either inadvertently or by searching, and then removed it from the protected area and turned it over to the police; *e. g.* United States v. Winbush, 428 F.2d 357 (6th Cir. 1970); Barnes v. United States, 373 F.2d 517 (5th Cir. 1967); United States v. Goldberg, 330 F.2d 30, 35 (3d Cir.), cert. denied, 377 U.S. 953, 84 S.Ct. 1630,

12 L.Ed.2d 497 (1964); or those in which the suspects had abandoned the property or vacated the premises searched so that they had no standing to complain of the search or seizure. *E. g.* Abel v. United States, 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Coleman v. Maxwell, 387 F.2d 134 (6th Cir. 1967) (as amended on denial of rehearing, March 25, 1968); Gandy v. Watkins, 237 F.Supp. 266 (M.D.Ala.), cert. denied, 380 U.S. 946, 85 S.Ct. 1032, 13 L.Ed.2d 965 (1965).

States, 246 F.2d 298, 304 (5th Cir.), cert. denied, 355 U.S. 863, 78 S.Ct. 96, 2 L.Ed.2d 69 (1957). I would therefore sustain the District Court's determination that the evidence seized was admissible.

Although neither of the other opinions discusses this issue, appellant Nelson contends that plain error was committed when the government called as a witness Williard Manuel, who was named in the indictment as an accomplice, when it knew Manuel would refuse to answer its inquiries on the ground that his answers might tend to incriminate him.[3] No objection was made, and it is possible that the decision not to object was tactical because at least once, on cross-examination of a police officer, Nelson's attorney attempted to suggest that the luggage belonged to Manuel. Nelson may have hoped that Manuel's inculpation would have exculpated him. Appellant does not contend that the government called Manuel to introduce otherwise inadmissible evidence or that there was an improper reference in argument to the refusal to answer. I find no reason to disturb the conviction on this ground. *See* United States v. Maffei, 450 F.2d 928 (6th Cir. 1971); United States v. Compton, 365 F.2d 1, 4–6 (6th Cir.), cert. denied, 385 U.S. 956, 87 S.Ct. 391, 17 L. Ed.2d 303 (1966).

The remaining issues on appeal, including the attack upon the sentencing process, are insubstantial and in my view do not require discussion.

I would affirm.

MILLER, Circuit Judge (concurring).

Our panel is in unanimous agreement that the warrantless searches made by the police lieutenant were illegal and that information obtained as a result may not be relied upon to support a finding of probable cause. Nevertheless, Judge McCree concludes that the evidence obtained after the issuance of the search warrant was validly admitted into evidence by applying the rule stated in a number of cases that when the affidavit in support of a search warrant contains information which in part is unlawfully obtained, the validity of the warrant and search depends upon whether the untainted information, considered by itself, establishes probable cause for the issuance of the warrant. In support of this principle he cites Howell v. Cupp, 427 F.2d 36 (9th Cir. 1970); James v. United States, 135 U.S.App.D.C. 314, 418 F.2d 1150 (1969); United States v. Sterling, 369 F.2d 799, 802 (3rd Cir. 1966); and Clay v. United States, 246 F.2d 298, 304 (5th Cir.), cert. denied 355 U.S. 863, 78 S.Ct. 96, 2 L.Ed. 2d 69 (1957). To this list may be added Chin Kay v. United States, 311 F.2d 317, 321 (9th Cir. 1962). In order to apply the principle stated in these cases it is necessary to find here that the information supplied by the motel employee Parham would be sufficient to justify a magistrate in issuing a search warrant on the basis of that information alone apart from the additional information obtained by the officer as a result of his two illegal searches of the motel room. In this connection Judge McCree cites Tenn. Code Ann. Sec. 39–908 which is reproduced below.[1]

While this statute as construed in Shafer v. State, 214 Tenn. 416, 381 S.W. 2d 254 (1964), may possibly support the conclusion that the Parham information constituted probable cause that *Tennessee* law was being violated, the conclusion is

---

3. After stating his name, Manuel refused to reply to the question "do you know Willie Wynder or Oscar Nelson?" on the ground that his answer might tend to incriminate him. There ensued a colloquy whether Manuel would refuse to answer any further questions, and the government made only the additional inquiry "Mr. Manuel, were you at the Alamo Plaza Motel on March 27, 1970?"; and Manuel also refused to answer that question.

1. *Carrying burglarious instruments—Penalty.*—Any person who carries concealed about the person any false or skeleton keys, jimmies, or any article of the kind intended for effecting secret entrance into houses, for the purpose of committing theft, or other violations of the law, is guilty of a felony, and, upon conviction, shall be sentenced to confinement in the penitentiary for a period of not less than one (1) year nor more than ten (10) years.

not free from doubt. I cannot find with any degree of confidence or certainty that a magistrate applying Tennessee law would have authorized the issuance of a search warrant based alone upon the information supplied by Parham. Parham's memorandum mentioned four bags, three containing bags (supposedly containers) of whiskey, a sack of money, tools and guns, and a large suitcase with a cutting torch inside. The tools were not referred to as "burglarious" tools, nor were they otherwise described by Parham. No information was given about a burglary having occurred in the vicinity or elsewhere. Although one would have to admit that the information was sufficient to arouse the officer's suspicion, to me it would be sheer speculation to say that a Tennessee magistrate would have acted upon that information alone to issue a warrant.

This being true, I would apply the principle enunciated by the United States District Court for the Southern District of New York in United States v. Epstein, 240 F.Supp. 80 (D.C.S.D.N.Y. 1965), quoted with approval by the Third Circuit in its opinion in United States v. Sterling, *supra*. "This is not to say that law enforcement officials may with impunity include impermissible matter in applications for search warrants in the hope that a Commissioner might thereby be persuaded to find probable cause where otherwise none exists *or the issue is in doubt*; in such a case inclusion of illegally obtained information would require quashal of the warrant."

As I assess the facts in the present case, that is exactly what happened. The information legally obtained by Parham in his search of the motel room and furnished to the officer was sketchy and incomplete although suggestive of the possibility of criminal activity. The officer to whom the information was given was not sufficiently satisfied with it

to apply to a magistrate for a warrant. Instead he almost immediately conducted two illegal searches as a result of which he not only confirmed the information which had been given to him by Parham but in addition obtained information with respect to the postal money orders and the identification card which enabled him to ascertain with certainty that a crime or crimes had been committed. The identification card furnished the lead from which the officers were able to discover that a post office burglary had been committed in Leland, Mississippi, in which a number of postal money orders had been taken. All of the facts and information obtained both as a result of the legal and illegal entrances and searches were comingled and set forth in the affidavit presented to the magistrate with no indication being given as to how the separate items of information had been obtained. Indeed, a person reading the warrant would assume that all of the facts were supplied by an informant deemed by the officers to be reliable. There was certainly no way that the magistrate could have known that the principal facts stated in the warrant (facts indisputably evidencing criminal activity) were illegally obtained. This is not a case where the tainted information which is included in an affidavit along with untainted information is trivial or insignificant or merely cumulative. It is a case where the tainted information is of such major importance that its absence creates grave doubt that the warrant would have issued without it. If we are to uphold the fundamental purposes of the Fourth Amendment and the exclusionary rule by which it is implemented, it is my belief that the practice indulged in by the officers in this case must be condemned and the tainted evidence upon which appellants were convicted suppressed.[2]

---

2. It is noteworthy that in James v. United States, *supra*, a case more factually similar to the present case than the others cited by Judge McCree, the lawful information which was upheld on the "plain view doctrine" was clearly sufficient in

and of itself to support the issuance of the warrant. The holding in *James* may be explained on the basis that the additional information obtained as a result of an illegal entrance into the garage was merely "cumulative." Moreover, it is

I am in full agreement with Judge Edwards' concern, as reflected by his opinion, that the integrity of the Fourth Amendment be preserved against corrosion. Also, I must agree with him that it is unfortunate that the illegal police intrusions in this case must result in the setting aside of judgments of conviction of persons who were doubtless guilty of the serious offense with which they were charged. However, as the courts have many times reiterated, the exclusionary device is the only means by which the Fourth Amendment's guarantee of personal freedom may be effectively enforced. That this many times results in the guilty going free is not considered too high a price to pay.

noteworthy that the district court sustained the pretrial motion to suppress with respect to the information obtained as a result of the officer's subsequent illegal entry. In consequence, in that case the appellant's conviction for grand larceny and the unauthorized use of a motor vehicle was based upon the valid information obtained by the officer from his observations outside the garage.